ABE PETCHENIK v. WILLIAM S. RICH ET AL., PART-
NERS, &c.

Submitted March 20, 1913—Decided June 19, 1913.

1. The plaintiff delivered to his uncle personal property for the purpose of procuring a loan thereon for the uncle's use. The latter sent his son, a minor, to the loan office with the goods to obtain the loan. The loan office refused to contract with the minor but contracted over the telephone with the father, and thereby concluded the loan.

2. The plaintiff now seeks in replevin to avoid the loan by alleging the minority of the boy and the illegality of a loan made with a minor under the provisions of the Pawnbrokers act.  *Held*—

(1) That the uncle to whom the goods were delivered for the purpose of obtaining the loan was thereby constituted bailee, and he alone under the circumstances could maintain replevin as bailee in possession of the goods; and

(2) That the contract of pledge was entered into not with the minor but with the bailee and was valid.

---

On appeal from the Second District Court of Newark.

Before Justices GARRISON, SWAYZE and MINTURN.

For the plaintiff, *Benjamin M. Weinberg.*

For the defendants, *Philip J. Schotland.*

The opinion of the court was delivered by

MINTURN, J.   The agreed state of the case shows that judgment was given by the District Court in favor of the plaintiff

upon the following facts: Plaintiff being the owner of a gold watch and a gold locket and chain loaned them to his uncle, Max Roth, to enable him to procure a loan thereon for Roth's own use. The chattels were delivered to Roth's son, a lad of seventeen years, to deliver to his father. The father upon receipt of the chattels sent the son to the defendants, pawnbrokers in Newark, to procure the loan. The defendants, instead of accepting the goods from the boy and dealing with him, communicated with the father over the telephone, and negotiated the loan with him. The plaintiff, by an action of replevin, seeks to obtain possession of the goods, and the District Court, upon the theory that the defendants acted illegally in accepting the chattels from a minor under eighteen years of age, in violation of the statute governing pawnbrokers (*Comp. Stat.,* p. 3931, § 16, and *Pamph. L.* 1911, p. 586), and were therefore illegally in possession of the property, rendered judgment for the plaintiff.

Two questions are presented by the case. The first inquiry is whether the plaintiff can maintain replevin, and the second is whether the statutes referred to apply.

The action of replevin at common law was a possessory action, and proceeded upon the theory that the person suing was entitled to the possession from one who came wrongfully into possession of chattels.

Consequently, where a special bailee, without authority, sells or pledges the goods in his possession, and delivers them to his vendee, Lord Redesdale held that replevin cannot be maintained against the latter by the owner, because there is no trespass in his taking possession. *Mennie* v. *Blake,* 6 *El. & B.* 842.

This feature of the common law was changed by our Replevin act, so as to confer a right of action in replevin for an unlawful detention. *Comp. Stat.,* p. 4368, § 2; *Bruen* v. *Ogden,* 6 *Halst.* 370.

But the addition of this section did not confer a right on the owner of goods and chattels to maintain replevin in all cases where his goods are in another's possession.

To constitute unlawful detainer there must be an actual conversion, or a refusal to deliver on demand, or some repudiation by the defendant of the owner's right. *Woodside* v. *Adams*, 11 *Vroom* 417.

The second section of the Replevin act, providing for the remedy in case of an unlawful detainer, declares that the unlawful detainer shall exist where goods are unlawfully detained "from their lawful owner or the person entitled to the possession of the same."

In the case at bar, the plaintiff voluntarily parted with the possession of the goods, and surrendered them to Roth for the very purpose of depositing them with the defendants or such other agency as would make a loan upon them for Roth's use, and the plaintiff thereby in effect constituted Roth his agent or bailee for the purpose of depositing the goods with these defendants. *Qui facit per alium facit per se.*

It is difficult to perceive, therefore, upon what theory of law the plaintiff can now, after the loan has been made, disown and disavow this special agency, and the very contract contemplated thereunder; and without tendering to the defendants the consideration advanced upon the assumed legality of the pledge, practically repudiate his contract, and thereby deprive the defendants both of their money and their security.

Neither morals nor jurisprudence contemplate judicial recognition and support of such a doctrine; and in the application of the maxim *Volenti non fit injuria,* such a contention receives its legal and salutary solution. *Byam* v. *Bullard,* 1 *Curt.* (*U. S.*) 101; *Caswell* v. *Worth,* 5 *El. & B.* 849.

The plaintiff clearly, therefore, is not entitled to the possession of the goods, at this time, since the bailment he contemplated and authorized has not terminated, but still subsists leaving the right to possession in Max Roth, who alone, under the terms of the bailment, is in a legal position to maintain replevin as against these defendants.    12 *Am. L. Rev.* 167; 5 *Cyc.* 210, and cases.

It will be perceived also that the contract of the defendants was made with the elder Roth over the telephone, and not with a minor.    The defendants refused to deal with the latter and

contracted direct with Roth; the minor simply delivering the goods as the messenger of Roth.

The Pawnbrokers act (*Comp. Stat., p.* 3931, § 16) expressly provides that the reception of goods in pledge from the hands of a minor may be legalized by the written order or consent of the parent or guardian accompanying the pledge. In the present instance, however, the defendants had the direct verbal order of the elder Roth to make the loan which, in effect, was equivalent to his presence at the agency with the boy beside him carrying the property as his messenger.

The pledge in this case was therefore neither within the spirit nor the letter of the act, which was manifestly intended to prevent pawnbrokers from dealing direct with minors on their own account or as the agents of others.

The judgment of the trial court will be reversed and a judgment ordered to be entered in this court, in favor of the defendants, with costs.